UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAJIB SHOUCAIR,                                Case No. 07-12964

              Plaintiff,                       Anna Diggs Taylor
                                               U.S. District Judge
vs.

                                               Michael Hluchaniuk
MILLICENT WARREN AND                           U.S. Magistrate Judge
CORRECTIONS OFFICERS
DOE 1 AND DOE 2,

              Defendants.
_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.     PROCEDURAL HISTORY

        The present complaint was filed by plaintiff Najib Shoucair, a prisoner in the

custody of the State of Michigan, on July 17, 2007.  (Dkt. # 1).  In that complaint,

plaintiff seeks damages against three employees of the Michigan Department of

Corrections (MDOC) based on allegations that he was denied certain rights under

the United States Constitution.  Plaintiff sought to proceed under the provisions of

28 U.S.C. § 1915(a), which allows a party to file a complaint without payment of

customary court fees.  (Dkt. # 2).  He was granted the ability to proceed *in forma

pauperis* by order dated July 19, 2007.  (Dkt. # 3).

Counsel appeared on behalf of defendant Millicent Warren (the other two defendants are as of yet unidentified) and a Motion for Summary Judgment was filed on September 24, 2007, arguing only that plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. (Dkt. # 9, 10). Plaintiff filed a response to the Motion For Summary Judgment on October 15, 2007 and an addendum to his response on January 7, 2008. (Dkt. # 10, 13).

On October 19, 2007, an order was entered referring this case to Magistrate Judge Mona K. Majzoub for all pretrial matters. (Dkt. # 11). On January 14, 2008, this matter was reassigned from Magistrate Judge Majzoub to the undersigned. (Dkt. # 14).

It appears that defendant's Motion for Summary Judgment can be decided without further information or arguments from the parties and, based on the submissions of the parties, **IT IS RECOMMENDED** that defendant's Motion for Summary Judgment be **DENIED** for the following reasons.

## II. STATEMENT OF FACTS

### A. Plaintiff's Claims

Plaintiff alleges that defendant Millicent Warren (the prison warden) was personally made aware of a potential threat by a fellow prisoner to plaintiff's safety due, apparently, to his religious and spiritual customs as a Muslim and failed to take any precautions to protect plaintiff. (Dkt. # 1, ¶¶ 15-17). Plaintiff also claims that defendants Doe 1 and Doe 2 (unidentified prison guards) were personally notified of the threat made against plaintiff. *Id*. at ¶ 18. Despite such notice being given to the MDOC, plaintiff alleges that he was severely beaten by the fellow prisoner who made the threats. *Id*. at ¶ 18. Plaintiff further alleges that defendant Doe 2 told him that the assault "was of his own making" for being a "...f***** camelrider" and "relating the Plaintiff to other Muslim terrorists." *Id*. at ¶ 19 (asterisks in original).

According to plaintiff's Complaint, he was assaulted at the prison on May 25, 2006, which caused him to suffer from a depressed skull fracture, requiring hospitalization and treatment. (Dkt. # 1, ¶ 20). Plaintiff underwent a mechanical ventilation of his skull and an insertion of an endotracheal tube. *Id*. at ¶¶ 21-22. Plaintiff asserts that the fellow prisoner who assaulted him was charged with assault to do great bodily harm less than murder and with possession of a weapon.

*Id*. at ¶ 25.  Plaintiff claims that defendants Doe I and Doe 2 "incited prisoners to commit a grievous assault against the Plaintiff due [to] his being a member of a protected class."  *Id*. at ¶ 28.  Attached to his complaint are copies of the grievances filed with the MDOC, the responses to the grievances, various medical records relating to his hospitalization and treatment after the assault, and a letter from the Lapeer County Prosecuting Attorney's office regarding the criminal prosecution of the fellow prisoner, Demetrious Given, arising from the assault and weapons charge.  (Dkt. # 1, Exhibits).

### B.    MDOC Grievance Procedure

In conjunction with the Motion for Summary Judgment, defendant produced a copy of the applicable MDOC Policy Directive that sets forth the grievance procedures in effect at the time plaintiff submitted his grievance.  (Dkt. # 9, Ex. B (MDOC Policy Directive 03.02.130, eff. 12/19/03)); *see also Rusiecki v. Trombley*, 2008 W.L. 192284, *4 n. 2 (E.D. Mich 2008) (12/19/03 MDOC Policy Directive 03.02.130 in effect until it was superseded on March 5, 2007).

The MDOC Policy Directive explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant."  (Dkt. # 9, Ex. B, p. 1).  The

MDOC Policy Directive also explains that a grievance ***may***[1] be rejected if it is: (1) vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of another grievance already filed by that grievant; (2) the grievant is on modified access and has filed a grievance in violation of those applicable procedures; (3) the grievant did not attempt to resolve the issue with the staff member involved prior to filing of the grievance unless prevented from doing so by circumstances beyond the grievant's control; or (4) the grievance is filed in an untimely matter, although, a grievance shall not be rejected as untimely if there is a valid reason for the delay.  (Dkt. # 9, Ex. B, p. 3, § G).[2]

The MDOC Policy Directive cautions that grievances must not be rejected or denied solely because the prisoner has not included exhibits or other pertinent documents with his grievance.  If the grievance references documents or exhibits not included in the prisoner's file or otherwise available to the respondent except through the prisoner, the documents shall be reviewed with the prisoner as part of

---

[1] A grievance coordinator ***must*** reject grievances (1) that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, (2) which raise certain non-grievable issues, and (3) that use profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. (Dkt. # 9, Ex. B, pp. 2-3, §§ F, G).

[2] Defendant does not claim in the Motion for Summary Judgment that plaintiff's grievance was untimely filed at any stage of the three-step grievance process.

the grievance investigation process. (Dkt. # 9, Ex. B, p. 3, § H). The MDOC Policy Directive also provides that if a grievance is rejected, the grievant may appeal the rejection to the next step, but a new grievance shall not be filed regarding the rejection. (Dkt. # 9, Ex. B., p. 3, § I).

The MDOC Policy Directive sets forth an exception to the three-step grievance process. If the grievance alleges racial or ethnic discrimination or staff brutality or corruption, it may be submitted directly to Step III. (Dkt. # 9, Ex. B, p. 4, § S). Such a grievance must be "carefully reviewed to determine whether to respond directly to the grievance, request an investigation into the issue raised in the grievance, or return it to the grievant for filing at Step I." *Id*.

As explained in defendant's supporting brief, the MDOC Policy Directive also requires that the information provided "shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." (Dkt. # 9, Ex. B., p. 4, § T) (emphasis in original). Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly. *Id*.

The MDOC Policy Directive mandates that the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance

accepted" and that "any additional investigation was completed as necessary for each Step II grievance accepted...." (Dkt. # 9, Ex. B, pp. 6-7, §§ CC, GG). Finally, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." (Dkt. # 9, Ex. B., pp. 5-6, §§ Y, AA).

C.     Plaintiff's Grievance Against MDOC

Plaintiff submitted a Step I grievance on August 15, 2006 regarding the above described events.  (Dkt. # 1, Ex. A).  Plaintiff described an attempt "around the 25 of May" to resolve the issue before filing the grievance as follows: "A criminal investigation was held, at that time I expressed my concerns about the facilities Gross Negligence, and stated that I, when I felt I was medically able, would follow through on this issue." *Id*., emphasis in original.  In his statement describing the problem about which he was complaining, plaintiff wrote that the warden and the unidentified "officers" "fail[ed] to properly police the grounds, which has resulting in my having received severe trauma to the head i.e. see: medical records, which may in fact now be permanent." *Id*.  Plaintiff further wrote that "these officers...neglected to secure my safety..." and "failed to respond in a timely manner..." *Id*., emphasis in original.  Plaintiff also claimed that "over an

extended time period, certain officers INSTIGATED said prisoner to retaliate against me i.e., (<u>ORDERED A HIT</u>)." *Id.*, emphasis in original. Plaintiff claims that this constituted discrimination against an Arabic man. *Id.*

On August 31, 2006, MDOC rejected plaintiff's grievance because it purportedly failed to comply with MDOC Policy Directive 03.02.130 requiring "facts." (Dkt. # 1, Ex. A, p. 2). The grievance coordinator wrote that plaintiff's "grievance is lacking in facts; you present no facts upon which a grievance investigation may take place. For instance, who are these officers you accuse of putting out a hit on you?" *Id.*

Plaintiff filed a Step II grievance on October 3, 2006 in which he wrote, in part, "I stand firm upon my claims presented in step one; I have retained counsel and I will proceed to <u>suit</u> showing Gross Negligence through the Derelict of Duties performed by staff on shift during this assault." (Dkt. # 1, Ex. A, p. 3, emphasis in original). After reviewing plaintiff's Step II grievance, the MDOC concluded on October 5, 2006 that "Step II also contains no facts which can be investigated" and that it was "unclear what are his issues. Therefore, it is also not possible to determine whether a violation has occurred." (Dkt. # 1, Ex. A, p. 4).

In his Step III grievance, plaintiff continued to assert that his "claims are in order" and stated that it "does not matter how you choose to adjudicate on this

grievance, at this state I have been instructed by my legal counsel to exhaust these internal remedies so that I may place myself in position to bring <u>suit</u>." (Dkt. # 1, Ex. A, p. 5, emphasis in original). In its rejection of the Step III grievance, the MDOC wrote as follows:

> The Grievant presents an issue which alleges that staff are negligent in securing his safety. He is seeking corrective action as relief. This issue was rejected in accordance with PD 03.02.130, Prisoner/Parolee Grievances. The action of staff is in accordance with the above referenced policy, as it does not cite a specific policy violation. Therefore, further relief is denied at this level.
>
> This investigator has reviewed the record presented with the appeal to step three. The record supports that staff responded to this grievance at step one and step two. This grievance appeal is denied.

(Dkt. # 1, Ex. A, p. 6).

     D.    <u>Defendant's Motion for Summary Judgment</u>

Defendant argues that plaintiff's complaint should be dismissed for failure to properly exhaust administrative remedies. (Dkt. # 9). Defendant asserts that not only must a grievant complete the three-step grievance process before filing suit, he must do so "properly," citing, *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006). According to defendant, plaintiff's grievance failed to comply with subsection T of the MDOC Policy Directive, which requires a grievance to be

limited to the facts and to include "who, what, when, where, why, how" and the dates, times, places and names of those involved. (Dkt. # 9, p. 3). Defendant claims that plaintiff's grievance did not follow the MDOC Policy Directive because it "did not contain any facts that would allow the grievance respondent to investigate the claim." *Id*. Defendant explains that, since "such investigation is the whole point of the grievance system, and because Plaintiff's grievance did not put officials on notice of any specific policy violations, Plaintiff's grievance was rejected." *Id*.

E.    Plaintiff's Response to Defendant's Motion for Summary Judgment

In his response, plaintiff asserts that the MDOC Policy Directive does not require prisoners to investigate knowledge already available to administrators and that listing parties as "Doe" where they are unknown to the prisoner is permissible.[3] (Dkt. # 10, p. 1). Plaintiff also submitted an "Addendum to Plaintiff's Response to Defendants' [sic] Motion for Summary Judgment" on January 7, 2008. (Dkt. # 13). Plaintiff points out that the MDOC was able to

_____

[3] Plaintiff claims that listing unknown parties as "Doe" is set forth in subsection S of the MDOC Policy Directive. The undersigned is unable to locate any such reference anywhere in the applicable MDOC Policy Directive. However, as discussed herein, under pertinent case law, a grievance will not necessarily be deemed unexhausted where a grievant failed to identify the names of individuals if he does not have knowledge of their identities or cannot reasonably obtain such information.

discern that he was alleging that staff were negligent in securing his safety as set forth in the response to his Step III grievance. (Dkt. # 13, p. 2). Plaintiff also points out that the MDOC's response to the Step III grievance claims that he failed to identify a specific "policy violation" and he was denied relief on that basis. *Id*. Plaintiff argues, however, that the MDOC Policy Directive does not require that a prisoner point to a particular policy or procedure that has been violated in order to file a grievance. (Dkt. # 13, p. 3). Plaintiff also argues that the Sixth Circuit does not require a grievant to allege a specific legal theory, but need only give "prison officials fair notice of the alleged mistreatment or misconduct...." *Id*., quoting, *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).

Plaintiff claims that, construing his grievances liberally, the MDOC had "all of the facts it required to perform an investigation into Plaintiff's grievance." (Dkt. # 13, p. 3). Specifically, plaintiff's grievance refers to the criminal investigation that was held and the prosecution of a fellow prisoner for the assault. *Id*. Plaintiff claims that he was not provided copies of the Michigan State Police criminal investigation or the MDOC internal reports. *Id*. Plaintiff further asserts that, as "crudely as the grievance may seem to have been drafted, Defendant's credibility with respect to 'no knowledge' is lacking under the circumstances." *Id*. Plaintiff

also claims that the MDOC was aware of his "English problems" and should have interviewed him in accordance with subsection AA of its Policy Directive. *Id.*

## III. ANALYSIS

A.     Standard of Review.

Defendant does not cite a standard of review in the Motion for Summary Judgment, which asks for "dismissal" of plaintiff's claims for failure to exhaust. Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).

B.     Burden of Proof On Exhaustion

Recently, the United States Supreme Court decided *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007) in which it held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id.* Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly,

exhaustion is satisfied if plaintiff complied with the grievance procedures of the MDOC and defendant bears the burden of showing otherwise. *See also Kramer v. Wilkinson*, 226 Fed.Appx. 461 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

      C.     <u>The Scope and Limits of the Proper Exhaustion Requirement</u>.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 126 S.Ct. at 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. The Supreme Court also stated that "[t]he PLRA attempts to eliminate unwarranted federal-court

interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process ***and*** accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88 (emphasis added). Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones v. Bock* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to"file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001. There was an exception, however, to the pre-*Jones v. Bock* requirement that a defendant be specifically named in an administrative grievance: where the plaintiff did not know, and could not reasonably discover the person's name. *Merriweather v. Zamora*, 2006 W.L. 2711809, *9 (E.D. Mich. 2006), citing, *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003) ( "[A]n inmate need

14

not identify each officer by name when the identities of the particular officers are unknown.").[4]  In further explaining the basis for this so-called "exception," the *Merriweather* court relied on a similar decision from the Eleventh Circuit, which explained that the basis for its holding was found in the language of § 1997e(a):

> "Section 1997e(a) requires a prisoner to exhaust all '*available*' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses. But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him. ***Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner***."

*Merriweather*, at *9, quoting, *Brown v. Sikes*, 212 F.3d 1205, 1207-1208 (11th Cir. 2000) (emphasis added).

Nothing in *Woodford* or *Jones* suggests that the reasoning of *Merriweather* and *Brown* was altered by those decisions.  Indeed, the reasoning of *Woodford* lends support to the approach followed in *Merriweather* and many other lower

---

[4] While not discussed in the *Merriweather* decision, both the 2000 MDOC Policy Directive (at issue in *Jones v. Bock*) and the 2003 MDOC Policy Directive at issue in this case appear to be implicated in *Merriweather* because the plaintiff's complaints involved actions of prison officials from the year 2001 through the year 2004.  *Id*. at *1.

courts: a grievance will satisfy the exhaustion requirement so long as it is not "so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) (grievance adequate where prisoner described events surrounding injury "as best he could" and identified the "people he knew to be involved" in the incident), quoting, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (grievance need only object intelligently to some asserted shortcoming).

The critical holding in *Jones v. Bock* was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. The 2000 MDOC Policy Directive at issue in *Jones v. Bock* does not, however, contain the requirements that it "shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." Regardless, nothing in *Jones v. Bock* obviates the principle set forth in *Merriweather* that a prisoner cannot identify information in a grievance that he does not have. As noted in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 127 S.Ct. at 923, quoting,

*Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). As such, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id*. at 923. In my view, while *Jones v. Bock* involved a different grievance procedure, its holdings still support the *Merriweather* principle.

Moreover, while *Merriweather* did not rely on or refer to *Woodford*, nothing in *Woodford* is inconsistent with the reasoning in *Merriweather* regarding whether a prisoner is obligated to include facts in a grievance that the prisoner does not know or cannot reasonable determine at the beginning of the grievance process. While *Woodford* requires "proper" exhaustion of "available" administrative remedies, such a requirement does not alter the principle that a remedy is not "available" when the prisoner is unaware of certain facts that are relevant to the grievance. Thus, nothing in *Woodford* or *Jones* requires a grievant to somehow identify persons or information he does not have or cannot reasonably obtain.[5]

    D.    <u>Plaintiff Provided Fair Notice to Give The MDOC a Fair Opportunity to Investigate His Grievance.</u>

Based on the above standards, the issue presented is whether plaintiff gave the MDOC "fair notice" of his complaint sufficient to give it an opportunity to

---

[5] This construction is also consistent with the Supreme Court's long-standing admonition to avoid the "creation of an additional procedural technicality...in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co.*, 404 U.S. 522, 526-27 (1972).

investigate and thus satisfy the exhaustion requirement. Defendant argues that plaintiff's purported failure to allege only facts in his grievance and to spell out the "who, what, when, where, why, how" of his complaint renders it unexhausted for failure to comply with MDOC grievance procedures, relying on *Woodford, supra*. The MDOC offers no analysis regarding how the purported defects in plaintiff's grievances constitute a failure to comply with any "other critical procedural rules" as contemplated by *Woodford*. At best, defendant claims that plaintiff's grievance was properly rejected because it was too "vague," as none of the other bases for rejecting a grievance appear to be applicable. (Dkt. # 9, Ex. B, pp. 2-3, §§ F, G).

Plaintiff, on the other hand, argues that defendant's claim that the MDOC could not figure out what his complaint was about is disingenuous, given the MDOC's knowledge of the internal investigation conducted relating to the incident, the criminal prosecution of the prisoner who attacked plaintiff, and plaintiff's hospitalization after the attack. Defendant has not addressed these arguments or disputed plaintiff's allegations in this regard. (Dkt. # 10, 13).

As set forth in a post-*Woodford* decision from the Western District of Michigan, a fair interpretation of the MDOC Policy Directive gives the grievance coordinator discretion to accept or reject a grievance that fails to comply with subsection T as being vague. *Baker v. Vanderark*, 2007 W.L. 3244075, *7 (W.D.

Mich. 2007).  Viewing the evidence in a light most favorable to plaintiff as the

non-moving party and noting that the defendant has the burden of proving a failure

to exhaust administrative remedies, I conclude that it was an abuse of discretion for

the MDOC to reject plaintiff's grievance as being too vague for a response. While

plaintiff's grievance was not a model of clarity, the grievance provided sufficient

"fair notice" of the subject matter of his complaint to the MDOC such that,

contrary to defendant's assertions, it "would allow the grievance respondent to

investigate the claim." (Dkt. # 9, p. 3).  For example, in his grievances, plaintiff

mentioned the date of his assault, the fact that he was hospitalized immediately

after, that a criminal prosecution was taking place regarding the assault, that he had

reported threats made by a fellow prisoner against him to the warden specifically

and to unidentified "others," and that unidentified corrections officers failed to

protect him during the assault and may have incited or encouraged the assault.

(Dkt. # 1, Ex. A).  Notably, defendant offers no evidence or argument regarding

whether plaintiff knew the identities of the officers or could have discovered this

information.

  Had plaintiff's references to his medical records and the criminal

investigation been investigated further, they would have likely shed considerable

light on the details of his complaint.  While plaintiff did not attach any of the

referenced documents to his grievance, the MDOC Policy Directive makes it clear that grievances must not be rejected or denied solely because the prisoner has not included exhibits or other pertinent documents with his grievance. (Dkt. # 9, Ex. B, p. 3, § H). Further, nowhere in its responses to the grievances does the MDOC claim that it did not have access to the referenced documents. Presumably, the MDOC would have had access to records pertaining to the assault, plaintiff's hospitalization, and the criminal prosecution.[6] Yet, there is no evidence in the grievance responses that any attempt was made to retrieve or review such records. As defendant states, "such investigation is the whole point of the grievance system...." *Id*. The MDOC Policy Directive neither requires a grievant to put every piece of information in his possession in the grievance nor does it require the grievant to give "perfect notice." Rather, once "fair notice" of the complaint is provided, the burden is placed on the MDOC to conduct a complete investigation.

It is this burden that the MDOC avoided by rejecting plaintiff's grievance as unduly vague. For example, while plaintiff did not seek to proceed directly to Step III, as permitted by subsection S of the MDOC Policy Directive when a grievance alleges racial or ethnic discrimination or staff brutality or corruption (as plaintiff's grievance did), any such grievance must be "carefully reviewed to determine

---

[6] Again, defendant has neither disputed nor addressed this allegation.

whether to respond directly to the grievance, request an investigation into the issue raised in the grievance, or return it to the grievant for filing at Step I." (Dkt. # 9, Ex. B, p. 4, § S). Despite plaintiff's allegations of ethnic discrimination and possible participation in an assault by prison officers, no such careful scrutiny was given to this grievance. Instead, at Step III, it was determined that the "action of staff is in accordance with [the MDOC Policy Directive], as it does not cite a specific policy violation." (Dkt. # 1, Ex. A, p. 6).[7]

By rejecting the grievance as too "vague," the MDOC also avoided their obligations to "ensure that a thorough investigation was completed for each Step I grievance accepted" and that "any additional investigation was completed as necessary for each Step II grievance accepted...." (Dkt. # 9, Ex. B, pp. 6-7, §§ CC, GG). By not addressing the merits of plaintiff's grievance, the MDOC further

_____

[7] As plaintiff correctly points out, a grievant need not point to a specific policy violation in order to file a grievance. Rather, the MDOC grievance policy states that "[g]rievances may be submitted regarding alleged violations of policy or procedure *or unsatisfactory conditions of confinement which directly affect the grievant*." (Dkt. # 9, Ex. B, p. 1) (emphasis added). Plaintiff's allegations of ethnic discrimination, failure to provide him with sufficient protection after notice of a threat, and staff incitement of an assault fall squarely into the category of "unsatisfactory conditions of confinement." *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates.); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) ("[D]eliberate indifference of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another.). The undersigned offers no opinion in this Report and Recommendation regarding the merits of plaintiff's claims.

sidestepped its obligation to interview the grievant, which would have allowed him to "explain the grievance more completely" and to enable the MDOC to "gather any additional information needed to respond to the grievance." (Dkt. # 9, Ex. B., pp. 5-6, §§ Y, AA). While a grievant should be strictly held to "an agency's deadlines and other critical procedural rules," the MDOC must also meaningfully participate in the grievance process. There is nothing in *Woodford* to suggest that the policy underpinnings of the exhaustion requirement, which include discouraging the "disregard of [the agency's] procedures," apply *only* to grievants. *See Woodford*, 126 S.Ct. at 2385. The MDOC Policy Directive, which provides that the grievance coordinator "shall ensure that a thorough investigation was completed," strongly indicates that the MDOC has an affirmative obligation to identify facts beyond those included in the grievance.

Indeed, if the MDOC does not meaningfully participate in its own grievance procedures, as illustrated in this case, the very purpose of the exhaustion requirement (to allow prison officials a fair opportunity to investigate and evaluate a grievant's claims) is frustrated. *Woodford*, 126 S.Ct. at 2385 (Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," creates an "administrate record that is helpful to the court."). Thus, where fair notice of a complaint is given in a

grievance, the MDOC cannot reject or refuse to investigate a grievance (thereby avoiding any opportunity to evaluate a grievant's claim or to create an administrative record) and then move to dismiss a federal lawsuit for failure to exhaust administrative remedies.[8]

Based on the information set forth in the grievance itself and the information described in the grievance that the MDOC could have accessed, I conclude that plaintiff's grievance was not "so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally."  *Kikumura*, 461 F.3d at 1283; *Brownell*, 446 F.3d at 310.  Under these circumstances, defendant has not satisfied the burden of showing that plaintiff failed to exhaust his administrative remedies and the motion for summary judgment should be denied.

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendant's Motion for Summary Judgment based on plaintiff's alleged failure to exhaust administrative remedies be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of

---

[8] This issue is of greater concern in the post-*Woodford* period because an inmate who fails to comply with the deadlines and other critical procedural rules set forth in the prison grievance procedure will be denied access to the federal courts for failure to "properly" exhaust the administrative remedies.

service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. L.R. 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections must be served on this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed twenty (20) pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue

contained within the objections by motion and order.  If the Court determines any

objections are without merit, it may rule without awaiting the response to the

objections.

Date:  March 20, 2008                                        s/Michael Hluchaniuk
                                                             United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Christine M. Campbell, Attorney at Law, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Najib Shoucair, #252899, Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.


                                                             s/James P. Peltier
                                                             Courtroom Deputy Clerk
                                                             U.S. District Court
                                                             600 Church Street
                                                             Flint, MI 48502
                                                             (810) 341-7850
                                                             pete_peltier@mied.uscourts.gov