UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAJIB SHOUCAIR,                                    Case No. 07-12964

            Plaintiff,                        Anna Diggs Taylor
vs.                                                United States District Judge

MILLICENT WARREN AND                               Michael Hluchaniuk
CORRECTIONS OFFICERS                               United States Magistrate Judge
DOE 1 AND DOE 2,

            Defendants.
_____/

**REPORT AND RECOMMENDATION
DEFENDANT WARREN'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Dkt. 41)**

## I.   PROCEDURAL HISTORY

Plaintiff, Najib Shoucair, a prisoner in the custody of the State of Michigan,

filed his initial complaint on July 17, 2007.  (Dkt. 1).  In that complaint, plaintiff

sought damages against three employees of the Michigan Department of

Corrections (MDOC) based on allegations that he was denied certain rights under

the United States Constitution.  *Id.*  Counsel appeared on behalf of defendant

Millicent Warren (the other two defendants not identified at that time) and a

motion for summary judgment was filed on September 24, 2007, arguing only that

plaintiff's complaint should be dismissed for failure to exhaust his administrative

remedies.  (Dkt. 9, 10).   The undersigned recommended that defendant's motion for summary judgment be denied, which recommendation was adopted by the District Court.  (Dkt. 9, 22).

On October 20, 2009, plaintiff's filed a motion entitled "Plaintiff's Protest to Defense Objection to Providing Records & Request for Administrative (Judicial) Review," requesting that the Court permit him to amend his complaint to substitute the "Doe" defendants for two named correctional officers. (Dkt. 32).  Pursuant to an order of the Court, plaintiff submitted a proposed amended complaint on November 19, 2008.  (Dkt. 36).  The Court granted plaintiff's motion to amend his complaint and Docket Entry 36 became the controlling complaint in this case. (Dkt. 49).  On December 28, 2009, defendant Millicent Warren filed a motion for summary judgment.  (Dkt. 41).  The Court ordered plaintiff to respond by January 30, 2009.  (Dkt. 42).  Plaintiff filed his response on January 1, 2009.  (Dkt. 43). This matter is now ready for report and recommendation.

Based on the analysis set forth below, the undersigned **RECOMMENDS** that defendant's motion for partial summary judgment be **GRANTED**, as to all of plaintiff's claimed violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

Report and Recommendation
Motion for Partial Summary Judgment
*Shoucair v. Warren*; 07-12964

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Amended Complaint

Plaintiff alleges that defendant Millicent Warren (the prison warden) is responsible for the custody, care, and supervision of all prisoners in the facility, including the investigation of prisoner grievances, complaints regarding conditions of confinement, and staff misconduct.  (Dkt. 36, ¶ 4).  On May 6, 2006, plaintiff, a devout Muslim, was approached by an unknown prisoner and told to "watch his back" after the prisoner witnessed a Moorish Science Muslim prisoner talking to a corrections officer about "what they should do to them all violently."  (Dkt. 36, ¶ 9).  After this incident, plaintiff alleges that he sent a kite to defendant Warren but was "never called out by Defendant Warren or any other designated staff," and no investigation was conducted regarding his kite.  (Dkt. 36, ¶ 10).  Plaintiff also alleges that, on April 11, 2006, while practicing his daily prayer, he was approached by a first shift corrections officer and warned that if he continued to pray, "there would be problems."  (Dkt. 36, ¶ 11).  Plaintiff sent a kite regarding this incident, but no investigation was conducted and no additional staff were added to the unit.  According to plaintiff he was "left exposed to a potentially high risk of assault based on at least two known incidents referencing Plaintiff's nationality and Muslim faith."  (Dkt. 36, ¶ 12).  Plaintiff alleges that defendant

Report and Recommendation
Motion for Partial Summary Judgment
*Shoucair v. Warren*; 07-12964

Warren knew or should have known that dissension among the different Muslim sections existed and that such verbal threats were potentially dangerous to plaintiff and others.  (Dkt. 36, ¶ 13).

According to plaintiff's amended complaint, he was assaulted at the prison on May 25, 2006, which caused him to suffer from a depressed skull fracture, requiring hospitalization and treatment.  (Dkt. 36, ¶¶ 14-17).  Plaintiff underwent a mechanical ventilation of his skull and an insertion of an endotracheal tube.  *Id*. at ¶ 17.  Plaintiff asserts that the fellow prisoner who assaulted him was charged with assault to do great bodily harm less than murder and with possession of a weapon.  *Id*. at ¶ 18.

Plaintiff claims that, after he was released from the hospital, he filed a grievance and requested an investigation.  (Dkt. 36, ¶ 19).  According to plaintiff, no meaningful investigation was conducted.  Plaintiff alleges that the failure of defendants to promptly and reasonably investigate and act "set in motion a chain of events that could have been avoided and [the] failure to investigate and act with foreknowledge of a potentially serious security problem constitute[s] deliberate indifference."  (Dkt. 36, ¶ 21).

As to defendant Warren, plaintiff makes several claims.  First, he claims that she violated his First and Fourteenth rights under the Religious Land Use and

Report and Recommendation
Motion for Partial Summary Judgment
*Shoucair v. Warren*; 07-12964

Institutionalized Persons Act (RLUIPA).  (Dkt. 36, Count I).  Plaintiff next alleges

that defendant Warren violated his Eighth Amendment right to be free from cruel

and unusual punishment.  (Dkt. 36, Count II).  Plaintiff alleges that defendant

Warren failed to properly train the other defendants as to how to investigate and

protect plaintiff from assaults by other prisoners.  (Dkt. 36, Count VII).  Plaintiff

also alleges that defendant Warren's failures (in conjunction with the other

defendants) to investigate, to take steps to protect plaintiff, and to stop the assault

constitute a conspiracy under 42 U.S.C. § 1985.  (Dkt. 36, Count VIII).

      B.    Defendant Warren's Motion for Summary Judgment[1]

Defendant Warren first points that, contrary to the allegations in the

complaint, the plaintiff stated at his deposition that he did not know the identity of

Givens at the time of the assault and that it would have been impossible for him to

---

[1] Defendant Warren's motion for summary judgment was filed before the Court ordered that plaintiff's amended complaint (Dkt. 36) was the controlling complaint in this case.  Defendant Warren's motion for summary judgment does not address the merits of plaintiff's claims under the ADA, the Rehabilitation Act, or the RLUIPA (and the First and Fourteenth Amendments), even though they were raised in plaintiff's initial complaint, as well as the amended complaint.  (Dkt. 1).  The amended complaint also contains a claim under 42 U.S.C. § 1985 that defendant Warren's motion for summary judgment does not specifically address.  Given that these claims are not addressed by defendant Warren in her motion for summary judgment, the undersigned makes no recommendation regarding the merits of plaintiff's claims under the ADA, the Rehabilitation Act, RLUIPA (and the First and Fourteenth Amendments), or § 1985 and treats plaintiff's motion as a motion for partial summary judgment.

have identified Givens as a threat prior to the assault.  (Dkt. 41, Ex. A, p. 13).

Plaintiff also testified that while Givens made a comment to him on May 25 before

the assault, he also stated that it was nothing to make him think that Givens might

assault him.  (Dkt. 41, Ex. A, p. 11).

Plaintiff testified at his deposition that he sent two kites to prison officials

asking for protection from a potential threat.  (Dkt. 41, Ex. A, p. 20).  He claims to

have sent the first kite on April 11, 2006, addressed to the prison inspector.  (Dkt.

41, Ex. A, p. 18).  According to plaintiff, he sent this kite in response to a threat

that he received while out on the yard.  (Dkt. 41, Ex. A, p. 18).  Plaintiff testified

that when he sent the kite, he thought that the threat was just a scare tactic and did

not think that he would be assaulted.  (Dkt. 41, Ex. A, p. 18).  Plaintiff claims that

he sent the second kite on May 8, 2006, addressed to defendant Warren; this is

Warren's only involvement in this case.  (Dkt. 41, Ex. A, p. 19).  Even though he

knew that the warden would be "too busy" to immediately respond to his kite, the

plaintiff did not go to any other staff member for assistance, and he never asked to

be placed in protective segregation.  (Dkt. 41, Ex. A, pp. 19-20).  Defendant

Warren denies ever receiving a kite from the plaintiff about this issue.  (Dkt. 41,

Ex. B).

Defendant argues that, under the circumstances defendant Warren did not

fail to provide relatively safe environments for plaintiff and did not ignore a serious risk to the safety of an inmate.  According to defendant Warren, she did not receive notice of a threat such that she was or should have been on notice of the need to provide additional protection for plaintiff.

Further, plaintiff did not seek out protection for himself, as would have been appropriate had he had an actual fear of assault.  According to defendant Warren, the prison had in place a procedure to request such segregation. Plaintiff was required only to voice his concerns to his counselor, RUM, ARUS, or another officer and then sign the appropriate form requesting placement in protective segregation.  Plaintiff did not, however, seek assistance from any of the officers with whom he has day-to-day contact; rather, he claims to have sent a memo to the warden, who he admittedly knew would be too busy to immediately address his concerns.

According to defendant Warren, her only alleged personal involvement in this case is that the plaintiff allegedly sent her a kite complaining of a possible threat to his safety.  Defendant points out that although plaintiff stated in the complaint that he identified Givens in that kite, plaintiff testified otherwise at his deposition. Further, plaintiff does not allege that defendant had any involvement with him on a day-to-day basis or that she somehow prevented him from obtaining

assistance through the established channels. Thus, according to defendant Warren, she was not personally involved in any alleged failure to protect plaintiff, and she is entitled to summary judgment.

Defendant Warren also asserts that plaintiff's claims are barred by the doctrines of absolute and qualified immunity.  She argues that where she has denied having received a kite from the plaintiff or any other notification that he thought that he was in danger; where, as warden, she implemented a local policy that allowed inmates to seek protective custody by signing a form to that effect; where it is not alleged that Warren prevented the plaintiff from utilizing that procedure; and where defendant Warren, as warden, cannot be involved in day-to-day affairs of individual prisoners, it cannot be said that she acted unreasonably or violated the plaintiff's clearly established constitutional rights. Thus, according to defendant Warren, she is entitled to qualified immunity. Defendant Warren also argues that, to the extent that plaintiff asserts any claims against her in her official capacity, they are barred by Eleventh Amendment immunity.[2]

C.    Plaintiff's Response

_____

[2]  Plaintiff makes it clear in his amended complaint that all of his claims are against defendants in their individual capacities.  Thus, Eleventh Amendment immunity is not at issue in this case.

Plaintiff argues that defendant Warren has not satisfied her burden of showing an absence of a genuine issue of material fact sufficient to shift the burden to plaintiff.  (Dkt. 43).  Plaintiff asserts that although defendant Warren denies receiving the kites requesting an investigation, defendant's response to plaintiff interrogatories show that "an officer reported to Inspector Mullins that the Plaintiff was told he was praying too loudly prior to the assault."  (Dkt. 43, citing Ex. 1, p. 2).  According to plaintiff, his amended complaint clearly pleaded that the officer warned plaintiff that if he continues to pray and worship, there would be problems.  Plaintiff asserts that this corroborates his allegations and creates a genuine issue of material fact "because there's a casual [sic] connection between the initial issue of religious freedom to practice and the ultimate assault as related to Plaintiff's religious and nationality."  (Dkt. 43, p. 5).

Plaintiff relies on case law standing for the proposition that if prison officials were aware of facts from which they could draw an inference that a substantial risk of serious harm existed, the prisoner may establish an official's awareness of the facts and the risk, even if the prisoner did not personally communicate the risk to the prison official.  (Dkt. 43, pp. 5-6).  Plaintiff also argues that defendant Warren's motion is premature because there are "several unanswered questions regarding security and conduct of staff which the Defendant Warren knew or

should have known about." (Dkt. 43, p. 7). According to plaintiff, defendant Warren has refused to disclose any information regarding the investigation and prosecution of the assailant that "would undoubtedly reveal the internal investigation reports and findings that would dispute Defendant Warren's alleged lack of knowledge or show other evidence that would demonstrate deliberate indifference." (Dkt. 43, p. 7). Plaintiff asserts that, at a minimum, there is evidence that defendant Warren was aware of the incident involving plaintiff and a unit officer, through defendant Mullins, regarding the problems caused by his religious practices. (Dkt. 43, p. 8).

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of

> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative
> evidence in support of the complaint to defeat the motion
> for summary judgment.  The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

B.   Personal Involvement

To establish a cause of action under § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988).  Defendant Warren does not claim that the first prong of this test is disputed.

Defendant Warren argues, and the undersigned agrees, that plaintiff fails to establish any genuine issue of material fact regarding her personal involvement in the events giving rise to his § 1983 claims.  With respect to plaintiff's claims under the Eighth Amendment, the Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Liability in a § 1983 action cannot, however, be based on a theory of *respondeat superior*.  *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  "[T]he mere right to control without any control

or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Id*. at 694 n. 58, citing, *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976). The question is, however, whether the official is "merely a supervisor" or whether the official is directly responsible for adopting and executing a particular procedure. *Taylor v. MDOC*, 69 F.3d 76, 81 (6th Cir. 1995). For example, in *Taylor*, the defendant was charged with "abandoning the specific duties of his position" and failing to implement a procedure "in the face of actual knowledge of a breakdown in the proper workings of the [transfer] department." *Id.* at 81, citing, *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). And, in *Farmer*, while the defendants successfully argued in the district court that they did not possess the required knowledge of potential danger because plaintiff never expressed any safety concerns to them, the Supreme Court reversed:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.... [I]t does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Farmer*, 511 U.S. at 825. (citation omitted). As the Sixth Circuit observed, "Farmer makes it clear that the correct inquiry is whether [the prison official] had

knowledge about the substantial risk of serious harm to a particular class of persons, not whether he knew who the particular victim turned out to be." *Taylor, 69 F.3d at 81*.

According to defendant Warren, her only alleged personal involvement in this case is that the plaintiff allegedly sent her a kite complaining of a possible threat to his safety. Defendant points out that although plaintiff stated in the complaint that he identified Givens in that kite, plaintiff testified otherwise at his deposition. Further, plaintiff does not allege that defendant had any involvement with him on a day-to-day basis or that she somehow prevented him from obtaining assistance through the established channels. Plaintiff, on the other hand, asserts that, at a minimum, there is evidence that defendant Warren was aware of the incident involving plaintiff and a unit officer, through defendant Mullins, regarding the problems caused by his religious practices. The undersigned suggests that plaintiff relies on a classic respondeat superior theory of liability, which is not permissible under § 1983. *See e.g.*, *Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)*, citing, *Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998)* ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"); *Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988)* (An allegation that a supervisor was aware of an actionable

wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983."); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) ("[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.").

Plaintiff also argues that defendant Warren's motion is premature because there are "several unanswered questions regarding security and conduct of staff which the Defendant Warren knew or should have known about." (Dkt. 43, p. 7). According to plaintiff, defendant Warren has refused to disclose any information regarding the investigation and prosecution of the assailant that "would undoubtedly reveal the internal investigation reports and findings that would dispute Defendant Warren's alleged lack of knowledge or show other evidence that would demonstrate deliberate indifference." (Dkt. 43, p. 7). This case has been pending since July 2007. Discovery closed on November 26, 2008 and the dispositive motion deadline was December 26, 2008. (Dkt. 28). Plaintiff has not

filed a Rule 56(f) affidavit asserting that he needs additional discovery in order to respond to defendant's motion for summary judgment, nor did plaintiff file any motions to compel in this case.[3]  Thus, plaintiff's reference to as yet unrevealed evidence in unavailing.

A.    Qualified Immunity

Defendant Warren claims to be entitled to qualified immunity regarding her actions in this case.  The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendant is not entitled to qualified immunity.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

------

[3] On December 17, 2008, plaintiff filed a document entitled "Reply to Response to Plaintiffs Amended Complaint and Request for Order to Answer Interrogatories."  (Dkt. 40).  To the extent that plaintiff's submission could be characterized as a motion to compel discovery, it failed to comply with Local Rule 7.1 in that the discovery requests to defendants were not attached to the motion and no certificate of service of the discovery requests was provided to the Court.

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194 (2001).  The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* at 201.  If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id.*  If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy.  *Pearson v. Callahan*, — U.S. —, 2009 WL 128768 (2009).  While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test.  In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the

constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

With respect to plaintiff's Eighth Amendment claims, the factual allegations in plaintiff's complaint as to defendant Warren, even if true, do not amount to cruel and unusual punishment.  Thus, the undersigned suggests that defendant Warren is entitled to qualified immunity with respect to plaintiff's Eighth Amendment claims.

## IV.   RECOMMENDATION

Based on foregoing, the undersigned **RECOMMENDS** that defendant Warren's motion for partial summary judgment be **GRANTED**, as to all of plaintiff's claimed violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 27, 2009                              s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judg

Report and Recommendation
Motion for Partial Summary Judgment
*Shoucair v. Warren*; 07-12964

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on <u>July 27, 2009,</u>  I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: <u>Clifton B. Schneider,</u> and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: <u>Najib Shoucair, # 252899, 3250 Pelham Road, Dearborn, MI 48214</u>.

s/James P. Peltier_____
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion for Partial Summary Judgment
*Shoucair v. Warren*; 07-12964
