UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NAJIB SHOUCAIR, | Case No. 07-12964 |
| Plaintiff, | Anna Diggs Taylor |
| vs. | United States District Judge |
| MILLICENT WARREN, | Michael Hluchaniuk |
| RICHARD MILLER, and | United States Magistrate Judge |
| KIYAWA WILLIAMS, | |
| Defendants. | |

# REPORT AND RECOMMENDATION
# DEFENDANTS' MOTION TO DISMISS (Dkt. 76)

## I.     PROCEDURAL HISTORY

Plaintiff, Najib Shoucair, a prisoner in the custody of the State of Michigan, filed his initial complaint on July 17, 2007. (Dkt. 1). In that complaint, plaintiff sought damages against three employees of the Michigan Department of Corrections (MDOC) based on allegations that he was denied certain rights under the United States Constitution. *Id*. Counsel appeared on behalf of defendant Millicent Warren (the other two defendants not identified at that time) and a motion for summary judgment was filed on September 24, 2007, arguing only that plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. (Dkt. 9, 10). The undersigned recommended that defendant's motion

1

Report and Recommendation
Motion to Dismiss/Judgment on Pleadings
*Shoucair v. Warren*; 07-12964

for summary judgment be denied, which recommendation was adopted by the District Court. (Dkt. 9, 22).

On October 20, 2009, plaintiff's filed a motion entitled "Plaintiff's Protest to Defense Objection to Providing Records & Request for Administrative (Judicial) Review," requesting that the Court permit him to amend his complaint to substitute the "Doe" defendants for two named correctional officers. (Dkt. 32). Pursuant to an order of the Court, plaintiff submitted a proposed amended complaint on November 19, 2008. (Dkt. 36). The Court granted plaintiff's motion to amend his complaint and Docket Entry 36 became the controlling complaint in this case. (Dkt. 49). On December 28, 2009, defendant Millicent Warren filed a motion for summary judgment. (Dkt. 41). The undersigned recommended that this motion be granted in part and denied in part, which was adopted by Judge Taylor. (Dkt. 61, 69). As noted in that report and recommendation, defendant Warren did not move for summary judgment on all claims asserted by plaintiff. Now, defendants Warren and Miller have moved to dismiss the remainder of plaintiff's claims, based on the pleading standard set forth in *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).

Based on the analysis set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss, which, as discussed below, has been construed as a motion for judgment on the pleadings, be **GRANTED**.

## II. STATEMENT OF FACTS

### A. Plaintiff's Amended Complaint

Plaintiff alleges that defendant Millicent Warren (the prison warden) is responsible for the custody, care, and supervision of all prisoners in the facility, including the investigation of prisoner grievances, complaints regarding conditions of confinement, and staff misconduct. (Dkt. 36, ¶ 4). On May 6, 2006, plaintiff, a devout Muslim, was approached by an unknown prisoner and told to "watch his back" after the prisoner witnessed a Moorish Science Muslim prisoner talking to a corrections officer about "what they should do to them all violently." (Dkt. 36, ¶ 9). After this incident, plaintiff alleges that he sent a kite to defendant Warren but was "never called out by Defendant Warren or any other designated staff," and no investigation was conducted regarding his kite. (Dkt. 36, ¶ 10). Plaintiff also alleges that, on April 11, 2006, while practicing his daily prayer, he was approached by a first shift corrections officer and warned that if he continued to pray, "there would be problems." (Dkt. 36, ¶ 11). Plaintiff sent a kite regarding this incident, but no investigation was conducted and no additional staff were added to the unit. According to plaintiff he was "left exposed to a potentially high risk of assault based on at least two known incidents referencing Plaintiff's nationality and Muslim faith." (Dkt. 36, ¶ 12). Plaintiff alleges that defendant Warren knew or should have known that dissension among the different Muslim

sects existed and that such verbal threats were potentially dangerous to plaintiff and others. (Dkt. 36, ¶ 13).

According to plaintiff's amended complaint, he was assaulted at the prison on May 25, 2006, which caused him to suffer from a depressed skull fracture, requiring hospitalization and treatment. (Dkt. 36, ¶¶ 14-17). Plaintiff underwent a mechanical ventilation of his skull and an insertion of an endotracheal tube. *Id*. at ¶ 17. Plaintiff asserts that the fellow prisoner who assaulted him was charged with assault to do great bodily harm less than murder and with possession of a weapon. *Id*. at ¶ 18.

Plaintiff claims that, after he was released from the hospital, he filed a grievance and requested an investigation. (Dkt. 36, ¶ 19). According to plaintiff, no meaningful investigation was conducted. Plaintiff alleges that the failure of defendants to promptly and reasonably investigate and act "set in motion a chain of events that could have been avoided and [the] failure to investigate and act with foreknowledge of a potentially serious security problem constitute[s] deliberate indifference." (Dkt. 36, ¶ 21).

As to defendant Warren, plaintiff makes several claims. First, he claims that she violated his First and Fourteenth rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Dkt. 36, Count I). Plaintiff next alleges that defendant Warren violated his Eighth Amendment right to be free from cruel

4

Report and Recommendation
Motion to Dismiss/Judgment on Pleadings
*Shoucair v. Warren*; 07-12964

and unusual punishment. (Dkt. 36, Count II). Plaintiff alleges that defendant Warren failed to properly train the other defendants as to how to investigate and protect plaintiff from assaults by other prisoners. (Dkt. 36, Count VII). Plaintiff also alleges that defendant Warren's failures (in conjunction with the other defendants) to investigate, to take steps to protect plaintiff, and to stop the assault constitute a conspiracy under 42 U.S.C. § 1985. (Dkt. 36, Count VIII).

As to defendant Miller (a correction officer at the Lapeer facility), plaintiff alleges that he was responsible for monitoring and managing prisoners in his care within the unit at all times, including logging security matters and notifying relief staff of any problems. (Dkt. 36, ¶ 5). Plaintiff alleges in Count III that Miller, like defendant Warren, violated his First and Fourteenth Amendment rights to freely practice and observe his Muslim faith and to be free from discrimination based on his nationality because he was aware of the threats made on two occasions, and failed to take action. Plaintiff also alleges in Count IV that defendant Miller violated his Eighth Amendment rights when he failed to prevent the assault and failed to intervene. Plaintiff also alleges that defendant Miller's failures (in conjunction with the other defendants) to investigate, to take steps to protect plaintiff, and to stop the assault constitute a conspiracy under 42 U.S.C. § 1985. (Dkt. 36, Count VIII).

### III. DISCUSSION

    A.    <u>Standard of Review</u>

Technically, defendants' motion to dismiss under Rule 12(b)(6) is untimely, given that such a motion must be filed before a responsive pleading is filed. Fed.R.Civ.P. 12(b). However, the undersigned construes defendants' motion as one for judgment on the pleadings under Rule 12(c), which may be brought after pleadings are closed, but early enough so as not to delay trial. *See e.g.*, *Trustees of the Univ. of Pennsylvania v. Mayflower Transit, Inc.*, 1997 U.S. Dist. LEXIS 14577, at *4 (E.D. Pa. 1997) ("although a post-answer Rule 12(b) motion is untimely, this timing requirement has customarily been treated as a mere technicality ... a motion to dismiss under Rule 12(b)(6) made after an answer has been filed may be treated, in the court's discretion, as a Rule 12(c) motion for judgment on the pleadings.") (internal citations and quotation marks omitted); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining principal difference between Rule 12( c) and Rule 12(b) motions "is the time of filing"; noting the two motions "are functionally identical"); *Dale v. Executive Office of the President*, 164 F.Supp.2d 22, 24 (D. D.C. 2001) (holding "[i]f a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6).).

The standard for a motion for judgment on the pleadings under Rule 12(c) is

the same as that for a motion to dismiss under Rule 12(b). *See e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards."). To survive a motion for judgment on the pleadings under Rule 12(c) or to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

B.  First Amendment and RLUIPA

Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. In the context of the First Amendment free exercise clause, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), quoting, *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard, D.O.C.*, 937 F.2d 1521, 1526 (10th Cir. 1991), citing, *Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991).

The RLUIPA states in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of

general applicability, unless the government
demonstrates that imposition of the burden on that person
(1) is in furtherance of a compelling governmental
interest; and (2) is the least restrictive means of
furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, a more stringent, less deferential standard is applied to a RLUIPA claim (the least restrictive means of furthering a compelling governmental interest) than to a First Amendment § 1983 claim (reasonably related to legitimate penological interests). *See Cutter v. Wilkinson*, 544 U.S. 709 (2005). Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the plaintiff. 42 U.S.C. § 2000cc-2(b).[1] The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. *See id*. A governmental practice, decision or regulation imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v.*

---

[1] In *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009), the Sixth Circuit held that the Eleventh Amendment bars claims for money damages in official capacity suits against state officials. Money damages suits against state officials in their individual capacities, while never specifically address by the Sixth Circuit (*Heard v. Caruso*, 2009 WL 26298293 (6th Cir. 2009)), is seemingly permissible. *See e.g. Atkins v. Christiansen*, 2009 WL 4042756 (W.D. Mich. 2009). The Sixth Circuit has at least implicitly acknowledged that a RLUIPA action can be brought against defendants named in their individual capacities. *See Figel v. Overton*, 263 Fed.Appx. 456, 458-459 (6th Cir. 2008), applying a qualified immunity analysis to a RLUIPA claim. Qualified immunity is a defense only available to individual defendants, not to a state or municipality, or defendants sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Farnsworth v. Baxter*, 2007 WL 2793364, *2 (W.D. Tenn. 2007).

Report and Recommendation
Motion to Dismiss/Judgment on Pleadings
*Shoucair v. Warren*; 07-12964

*Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from RLUIPA. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008), citing, *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).

According to defendants, plaintiff does nothing more than allege in conclusory fashion that his rights were violated and he does not allege that defendants personally prevented him from engaging in any religious activities or placed a substantial burden on his religious exercise. Rather, he claims that he was assaulted by another inmate due to conflict between his and that other inmate's respective religious groups. Defendants assert that plaintiff does not allege the existence of any policy that restricts religious practice. Instead, plaintiff's claim is really one under the Eighth Amendment, "and his attempt to also shoehorn these facts into other causes of action should be summarily rejected by the Court." In addition, defendants argue that the RLUIPA claim should be dismissed because injunctive relief is moot, as the plaintiff is out of prison, and monetary damages are barred.

Plaintiff filed two responses to this motion to dismiss and does not address the merits of either his First Amendment or RLUIPA claim. (Dkt. 80, 82). In addition, the undersigned suggests, based on a review of plaintiff's amended complaint, that he identifies no burden placed on the practice of his religion or any policy that impeded his ability to practice his religion in any respect. The undersigned agrees with defendants that plaintiff improperly attempts to force his Eighth Amendment claims into First Amendment and RLUIPA claims. Thus, defendants' motion to dismiss these claims should be granted.

### C.  Failure to Train - Defendant Warren

Defendant Warren points out that a supervisor is not liable under § 1983 for failing to train "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), quoting, *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). And, according to defendant Warren, plaintiff makes no specific allegation against her regarding training. Rather, defendant asserts that plaintiff merely makes a conclusion of law that Warren is liable for failure to train. According to defendant Warren, this is insufficient and the failure to train claim should be dismissed.

12

Report and Recommendation
Motion to Dismiss/Judgment on Pleadings
*Shoucair v. Warren*; 07-12964

Several cases from the Sixth Circuit provide guidance on a supervisory liability claim. For example, the court has stated that "[p]laintiff must prove that [the supervisory defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (internal and external citations omitted). Furthermore, the Sixth Circuit has stated:

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), quoting, *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Also, the Court has held that where the defendants' "only roles ... involve the ... the failure to act ... they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id*. at 300, citing,

*Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." Notably, under *Twombly* and *Iqbal*, a plaintiff must do more than simply recite the elements of a cause of action or make conclusory legal statements. *Iqbal*, 129 S.Ct. at 1949-50. And, a plaintiff may not simply allege supervisor liability premised on *respondeat superior*. Rather, at "a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

In response, plaintiff asserts defendant Warren denied receiving the notice informing her of the threat before the assault and thus, there is a genuine issue of material fact. Plaintiff has confused several issues. First, this is a motion to dismiss not a motion for summary judgment. Second, and more importantly, the issue raised by defendant in the motion to dismiss is related solely to the failure-to-train claim, which plaintiff does not address in his response. Third, the Court has already granted defendant Warren summary judgment on plaintiff's § 1983 relating to notice of the threat by another prisoner. (Dkt. 61, 69). A thorough review of the amended complaint reveals that plaintiff makes no factual allegations to support a

failure-to-train claim. The plaintiff simply makes a conclusion of law that defendant Warren, as Warden, is liable for failure to train unidentified persons. Thus, the undersigned suggests that plaintiff has failed to state a failure-to-train claim, even under a liberal construction of plaintiff's amended complaint, and this claim should be dismissed.

    D.    <u>Personal Involvement - Defendant Miller</u>

To establish a cause of action under § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). Defendant Miller does not claim that the first prong of this test is disputed.

Defendant Miller argues that plaintiff does not make any factual allegations against Miller. Defendant Miller is not even identified in the "Facts" portion of his amended complaint. (Dkt. 36, ¶¶ 9-21). At best, according to defendant Miller, plaintiff alleges that "the Defendants" failed to properly investigate. (Dkt. 36, ¶ 21). Plaintiff also alleges in Count IV that defendant Miller violated his Eighth Amendment rights when he failed to prevent the assault and failed to intervene. With respect to plaintiff's claims under the Eighth Amendment, the Supreme Court

has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A review of plaintiff's amended complaint reveals that plaintiff offers no factual allegations to support a claim that defendant Miller knew of and disregarded a substantial risk of harm to plaintiff. While plaintiff vaguely alleges that defendant Miller was "aware" of earlier threats against plaintiff or his Muslim sect, he does not set forth any more specific facts regarding defendant Miller's alleged knowledge and awareness. Thus, in the view of the undersigned, viewing the complaint liberally, plaintiff's Eighth Amendment claim against defendant Miller fails to state a claim on which relief can be granted.

E. Conspiracy

In order to establish a violation of § 1985(3), plaintiff would have to show (1) a conspiracy involving two or more people, (2) for the purpose of depriving, directly or indirectly a person or class of persons the equal protection of the law, (3) an act in furtherance of the conspiracy and (4) with a resulting injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. It must also be shown that the conspiracy was motivated by a class-

based animus such as race. *Smith v. Thornbury*, 136 F.3d 1070, 1078 (6th Cir. 1998).

Plaintiff alleges that defendants' failure to investigate, to take steps to protect plaintiff, to stop the assault, and to deny knowledge of plaintiff's complaints constitute a conspiracy in violation of § 1985. (Dkt. 36, Count VIII). The undersigned suggests that plaintiff's allegations of a conspiracy to deprive him of his constitutional rights based on any racial and religious animus are insufficiently specific, even under the liberal pleading standards applied to *pro se* litigants, and simply do not state a claim. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) ("conspiracy must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (Conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory.").

  F. <u>Eleventh Amendment Immunity</u>

A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this case, defendants are employed by the State of Michigan so a suit against

them in their official capacity is a suit against the State of Michigan. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Id*. The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity. In plaintiff's amended complaint, he specifically alleges that all defendants are being sued in their individual capacity. (Dkt. 36, ¶ 8). Thus, official capacity claims and Eleventh Amendment immunity do not appear to be an issue in this case.

## IV. RECOMMENDATION

Based on foregoing, the undersigned **RECOMMENDS** that defendant Warren's and defendant Miller's motion to dismiss be **GRANTED**, as to all of plaintiff's remaining claims

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 25, 2010                              s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

# **CERTIFICATE OF SERVICE**

I certify that, on May 25, 2010, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Clifton B. Schneider, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Najib Shoucair, # 252899, 3250 Pelham Road, Dearborn, MI 48214.

s/Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
